# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

LATAYNIA JONES,

    Plaintiff,

          v.

CIVIL ACTION
CASE NO. 10-02896-WGY

SHARP ELECTRONICS CORPORATION,

    Defendant.

## MEMORANDUM AND ORDER

### I.   INTRODUCTION

This is an action brought by Lataynia Jones ("Jones") against Sharp Electronics Corporation ("Sharp"). Jones asserts that (1) Sharp interfered with her right to take leave under the Family and Medical Leave Act (the "FMLA" or the "Act"), (2) Sharp terminated her employment in retaliation for exercising her rights under the FMLA, and (3) Sharp fired her on the basis of her disability in violation of the Tennessee Disability Act.[1] Sharp moved for summary judgment on all counts.

### A.   Procedural Posture

On November 23, 2010, Jones filed a complaint against Sharp in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. Notice Removal, Ex. 1, Compl., ECF No. 1-1.

---

[1] Jones's third claim alleges violation of the Tennessee Handicap Act. The Tennessee Handicap Act, however, was renamed in 2008 as the Tennessee Disability Act. See Tenn. Code Ann. § 8-50-103(a).

Jones alleged that Sharp interfered with her right to take leave under the FMLA, Compl. ¶ 29, terminated her employment in retaliation for her taking leave under the Act, id. ¶¶ 16-27, and violated the Tennessee Disability Act by terminating her employment because of her disability, id. ¶¶ 36-44.

On December 15, 2010, Sharp removed the action from the Tennessee Circuit Court to the United States District Court for the Western District of Tennessee, Western Division. Notice Removal, ECF No. 1. Sharp filed its answer on December 27, 2010. Answer, ECF No. 4.

On January 17, 2012, Sharp filed a motion for summary judgment, Mot. Summ. J., ECF No. 11, along with a memorandum in support of its motion, Mot. Summ. J., Ex. 1, Mem. Supp. Def.'s Mot. Summ. J. ("Mem. Supp. Mot. Summ. J."), ECF No. 11-1, and a statement of undisputed material facts, Mot. Summ. J., Ex. 2, Statement Undisputed Material Facts Supp. Def.'s Mot. Summ. J., ECF No. 11-2. On February 24, 2012, Jones filed her response to Sharp's motion for summary judgment, Pl.'s Resp. Def.'s Mot. Summ. J. ("Resp. Mot. Summ. J."), ECF No. 14, along with a supporting memorandum, Resp. Mot. Summ. J., Ex. 1, Pl.'s Mem. Resp. Def.'s Mot. Summ. J. ("Mem. Resp. Mot. Summ. J.), ECF No. 14-1, and a statement of facts, Resp. Mot. Summ. J., Ex. 2, Pl.'s Resp. Def.'s Statement "Undisputed" Material Facts Supp. Def.'s Mot. Summ. J. ("Jones SOF"), ECF No. 14-2. On March 9,

2

2012, Sharp filed its reply to Jones's response to the summary

judgment motion. Reply Pl.'s Resp. Def.'s Mot. Summ. J. ("Sharp

Reply"), ECF No. 15.

On June 21, 2012, the case was reassigned to this Court

pursuant to the Court's Visiting Judges Program. Elec. Clerk's

Notes, June 21, 2012, ECF No. 23. On September 7, 2012, the

parties notified the Court that they agreed to submit on the

papers and waive oral arguments. Elec. Clerk's Notes, Sept. 7,

2012, ECF No. 30.

## B.   Undisputed Facts

### 1.   Jones's Employment at Sharp

Sharp originally hired Jones as a casual employee on August

8, 1996, and subsequently hired her as a regular employee on

August 4, 1997. Jones SOF ¶¶ 1-2. As a regular employee, Jones

joined the International Brotherhood of Electrical Workers,

AFL-CIO, Local 474 (the "Union"). Id. ¶ 3. The Union and Sharp

had a Collective Bargaining Agreement (the "CBA"), and Jones

received updated copies of the CBA whenever new agreements were

reached. Id. ¶¶ 3-4. The CBA permits covered employees a

maximum leave of 140 days, which provides fifty-six days of leave

beyond that provided by the FMLA. Id. ¶ 36.

Sharp fired Jones on November 24, 2009. Id. ¶ 5. On

December 2, 2009, Jones filed a grievance with Sharp pursuant to

the CBA to protest her discharge.  Id. ¶ 6.  Ultimately her
grievance was denied.  Id. at 7.[2]

## 2.  **Hours Worked and Leave Taken**

Jones requested FMLA leave beginning on September 20, 2009.
Id. ¶ 15.  Sharp informs employees through the Leave Request
Forms that employees complete when requesting leave that it uses
a rolling twelve-month leave period to calculate an employee's
remaining FMLA leave.  Id. ¶¶ 24-25.  Jones completed these forms
each time she requested leave as early as 2007.  Id.  Sharp also
included notification of the rolling twelve-month calculation

---

[2] On March 17, 2012, Jones filed for Chapter 13 bankruptcy
protection in the United States Bankruptcy Court for the Western
District of Tennessee (the "Bankruptcy Court").  Id. ¶ 8.
Jones's petition to the Bankruptcy Court did not list the present
action or any claim against Sharp as an asset of her bankruptcy
estate.  Id. ¶ 9.  The Bankruptcy Court directed Jones to make
payments to the trustee on March 19, 2010, held the meeting of
creditors on April 6, 2010, and confirmed Jones's bankruptcy plan
on May 28, 2010.  Id. ¶ 10.  Jones's bankruptcy remained active
until July 21, 2011, when it was dismissed for Jones's failure to
make the required payments.  Id. ¶ 11.  Jones testified that she
was making the required payments to the trustee, that her
bankruptcy was still active, and that her counsel petitioned the
court to reinstate the conditions of her bankruptcy.  Id. ¶ 12.
Jones never filed or attempted to file an amended petition to
include this lawsuit or her claims against Sharp.  Id. ¶ 13.  She
claims she was unaware that she needed to include her lawsuit
against Sharp.  Id.  On May 26, 2010, two days before the
Bankruptcy Court confirmed her plan, Jones's counsel sent Sharp a
demand letter, claiming that Sharp violated the FMLA.  Id. ¶ 14.
As will be discussed infra, the Court need not address the
implications of the bankruptcy proceeding, see Christal A.
Delgado, Why All Counsel Should Understand Judicial Estoppel, For
the Defense, July/Aug./Sept. 2012, at 6, because doing so is not
necessary to adjudicate this case.

4

method in the Employer Response to Employee Request for Family Medical Leave, which Jones received before her September 2009 leave. Id. ¶ 26. Although Jones was aware of the rolling twelve-month period through the Leave Request Form and Employer Response, she did not understand what it meant. Id. ¶¶ 25-26.

In the preceding twelve-month period, from September 20, 2008, to September 20, 2009, Jones worked 923 hours. Id. ¶¶ 16-18. The cumulative time column of Jones's time card printout shows 2457.45 hours, however this includes time not worked by Jones, including paid and unpaid holidays, time off due to lack of work and while on leave of absence, personal days off, vacation, and voluntary time off. Id. ¶¶ 17-18. Her "FMLA Tracking" printout also shows she only actually worked 923 hours.[3] Id. ¶ 19. Jones is unaware of how many hours she worked prior to September 20, 2009. Id. ¶ 20.

From January 20 to May 3, 2009, Jones took voluntary layoff and consequently missed significant time from work. Id. ¶ 21. Jones did not work, nor did Sharp ask her to come into work during her voluntary time off. Id. ¶ 22. Jones has never had any disputes with her time records or paychecks and admits she has been paid by Sharp for all the hours she worked. Id. ¶ 23.

---

[3] Jones asserts that she lacks sufficient information to admit or deny what the "FMLA Tracking" printout shows. Id. ¶ 19.

Jones requested and received several FMLA leaves throughout her employment with Sharp. Id. ¶¶ 51-52. Jones took FMLA leave from October 17 to October 27, 2008, and for one day on October 31, 2008, totaling eleven days. Id. ¶ 27. She took another thirteen days from November 4 to November 16, 2008. Id. ¶ 28.

Jones used another forty-four days of her FMLA leave to have her kidney removed. Id. ¶¶ 29, 32. She took FMLA leave beginning on November 24, 2008, and, while she was originally expected to return to work on December 8, 2008, she remained out of work until January 19, 2009.[4] Id. ¶¶ 29-30, 32. Sharp informed Jones that this leave would be counted as FMLA leave except for the twelve days that Sharp shut down in December, which would count as leave under the CBA. Id. ¶ 31. Accordingly, Jones used sixty-eight of her eighty-four days[5] of FMLA leave in the twelve months preceding her scheduled September 20, 2009, leave. Id. ¶ 33. Consequently, she was entitled to sixteen days of FMLA leave on September 20, 2009. Id.

---

[4] Jones disputes the fact that she was not able to return to work until January 19, 2009, asserting she was able to return to work on December 16, 2008. Id. ¶ 30. Based on her affidavit and the facts provided, however, it appears Jones confused the stated date in her affidavit and improperly conflated her 2008 and 2009 leaves. See Resp. Mot. Summ. J., Ex. 3, Aff. Latayina Jones ¶ 12, ECF No. 14-3; Jones SOF ¶¶ 30, 41.

[5] Eighty-four days reflects the twelve weeks of leave an employee is entitled to under the Act.

Jones requested the September 2009 leave for depression. Id. ¶ 34. She scheduled her leave to begin September 20, 2009, and originally arranged to return on October 20, 2009. Id. Sharp approved this entire period as FMLA leave (even though Jones actually had but sixteen days remaining of her FMLA leave). See Mot. Summ. J., Ex. 3, Oral Dep. Latayina Jones ("Jones Dep."), ECF No. 11-3. On October 13, 2009, Jones's physician sent Sharp a letter recommending that Jones remain excused from work through November 13, 2009. Mot. Summ. J, Ex. 4, Exs. Dep. Pl. ("Dep. Exs.") 40, ECF No. 11-4. On October 19, 2009, Sharp approved Jones's additional leave and (now correctly) notified her that she had exhausted all of her FMLA leave on October 5, 2009. Jones SOF ¶ 37; Dep. Exs. 41.

On November 6, 2009, Sharp sent Jones a letter informing her that she was going to exhaust all of her leave on November 18, 2009, and may be terminated from her employment if she did not return on November 19, 2009. Jones SOF ¶ 38; Dep. Exs. 43. On November 16, Jones's physician sent Sharp a letter recommending that Jones be excused from work through December 15, 2009. Dep. Exs. 42. Jones's physician did not release her to return to work until December 16, 2009. Jones SOF ¶ 40. Jones was unable to work from September 20 to December 15, 2009. Id. ¶ 41.

Jones testified about a casual (non-bargaining unit) employee named Amber who was terminated for absences but was

7

later reinstated after she provided the proper paperwork. Id.
¶ 47. Amber was a casual employee, however, and was therefore
not entitled to FMLA or CBA leave. Id. ¶ 49. Jones does not
recall Amber's last name, learned of the situation through a
co-worker, and admits that Sharp terminated Amber for different
reasons. Id. ¶¶ 48, 50.

### 3. Jones's Alleged Disability

Jones suffered from bipolar disorder. Id. ¶ 53. She was
not diagnosed as bipolar until November 2009 despite requesting
leave for depression beginning September 20, 2009. Id. ¶ 54.
Jones's condition made her depressed, unable to be around large
crowds, afraid, and unable to be left alone. Id. ¶ 55. Jones
did not provide any paperwork to Sharp that stated she had
bipolar disorder, and she listed depression as the reason for
requesting leave on her Leave Request Form. Id. ¶ 63; Dep. Exs.
30.

Jones has not seen a doctor for her condition since December
2009. Jones SOF ¶ 56. She reports no problems with her bipolar
disorder since the beginning of 2010, and she has maintained a
normal life. Id. ¶ 57. Without insurance or other sources of
funds, Jones has not received medical treatment since Sharp
discharged her. Id. ¶ 56.

In order for Jones to perform her job at Sharp, she required
a reasonable accommodation of time off from September 20, 2009,

8

to December 15, 2009. Id. ¶ 58. While no one at Sharp ever told Jones she would be a risk due to her condition, Jones believes she was terminated because Sharp thought she was a "risk" and terminated her in retaliation for taking FMLA leave. Id. ¶ 65.

## II. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material -- "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is genuine if it is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court must construe evidence produced in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

The party seeking summary judgment has the initial burden to identify the portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477

9

U.S. 317, 323 (1986) (quoting the then operative version of Fed. R. Civ. P. 56(c)). The moving party may show "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant meets its burden, the nonmoving party can oppose summary judgment by making a sufficient showing that there is a genuine issue of material fact for trial. See id.; Adickes, 398 U.S. at 159-60. Other than facts admitted by both parties, courts must disregard all evidence from the moving party -- even if unopposed -- which the jury is not required to believe; that is, all evidence upon which the moving party bears the burden of proof. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000).

## B. Family and Medical Leave Act

Under the FMLA, employees are entitled to take twelve weeks of leave for, amongst other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Id. § 2611(11).

Employees who return to work within the approved twelve-week period are entitled to reinstatement to their previous or an

10

equivalent position. Edgar v. JAC Prods., Inc., 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2614(a)(1)). The Sixth Circuit consistently has held that "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." Id. at 506-07; see also Bryson v. Regis Corp., 498 F.3d 561, 571-72 (6th Cir. 2007); Williams v. Toyota Motor Mfg., Ky., Inc., 224 F.3d 840, 845 (6th Cir. 2000) (concluding that an employee who was unable to resume her duties at the end of her FMLA leave period suffered no harm when terminated), rev'd on other grounds, 534 U.S. 184 (2002); Cehrs v. Ne. Ohio Alzheimer's Research Ctr., 155 F.3d 775, 784-85 (6th Cir. 1998) (holding the employee had no FMLA claim when evidence was undisputed that employee was unable to return to work within period provided by FMLA).

The FMLA prohibits a covered employer from interfering with, restraining, or denying the exercise of its employees' rights under the statute. 29 U.S.C. § 2615(a)(1). Furthermore, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Id. § 2615(a)(2).

Two distinct theories of recovery arise under the FMLA. Edgar, 443 F.3d at 507; see also Arban v. West Publ'g Corp., 345 F.3d 390, 400-01 (6th Cir. 2003) (explaining the interference and

11

retaliation theories of recovery under the FMLA). The "entitlement" or "interference" theory, "derived from the FMLA's creation of substantive rights," provides that a violation of the FMLA occurs if an employer interferes with an employee's right to take medical leave or to be reinstated after the leave. Arban, 345 F.3d at 401. The "retaliation" theory provides protection for an employee who is discriminated against for exercising her rights under the FMLA. See Hunter v. Valley View Local Sch., 579 F.3d 688, 690-91 (6th Cir. 2009) (noting that employers are prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions" (alteration in original) (quoting 29 C.F.R. § 825.220(c))(internal quotation marks omitted)).

## 1.    Interference with FMLA Claim

29 U.S.C. section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under FMLA. 29 U.S.C. § 2615(a)(1). To succeed on an interference claim, an employee must show that "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." Edgar, 443 F.3d at 507 (6th Cir. 2006); accord Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

12

### a. Jones Does Not Qualify as an Eligible Employee Under the Act

This Court begins its analysis by determining whether Jones qualifies as an eligible employee under FMLA. To be eligible under the Act, an employee must have been employed by the employer for the preceding twelve months and must have worked at least 1250 hours during that time. Mutchler v. Dunlap Mem'l Hosp., 485 F.3d 854, 857 (6th Cir. 2007) (citing 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)).

To determine whether an employee has worked the requisite 1250 hours, the Court must use the principles established under section 7 of the Fair Labor Standards Act ("FLSA"). Id. ("In calculating the 'hours of service,' the Act incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act . . . . While neither the FMLA nor the FLSA explicitly define the term "hours of service," id., the FMLA specifies that an employee's "hours of service" are to be calculated pursuant to the FLSA, 29 U.S.C. § 2611(2)(C).

Further, the FMLA's implementing regulations clarify that, when calculating "hours of service" for FMLA purposes, "[t]he determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA." 29 C.F.R. § 825.110(c)(1) (emphasis added). An accurate accounting of

13

"hours of service" will be the actual hours worked under the
principles established in the FLSA. Id.

Part 785 of the FLSA guides the determination of working
hours. Id. § 785.1 (discussing "the principles involved in
determining what constitutes working time"). While the
regulations provide few principles, they state that "hours are
hours worked which the employee is required to give his
employer." Id. § 785.7; see also Plumley v. S. Container, Inc.,
303 F.3d 364, 372 (1st Cir. 2002) (holding that "hours of
service" under the FMLA "include only those hours actually worked
in the service and at the gain of the employer").

Additionally, "hours of service" for FMLA purposes are not
comparable to compensable hours. In Mutchler v. Dunlap Memorial
Hospital, 485 F.3d 854, the Sixth Circuit held that an employee's
"Weekender Hours," which provided employees sixty-eight hours
worth of compensation for completing a full forty-eight hour
weekend shift, do not constitute "hours of service" for FMLA
eligibility. Id. at 859.

In the twelve months preceding Jones's September 2009 leave,
both Jones's time card entries and Sharp's FMLA tracking system
show that Jones worked only 923 hours. Jones SOF ¶¶ 17, 19.
Although the cumulative time column on Jones's time card printout
shows 2457.45 hours, these cumulative hours include time not
worked by Jones. Id. ¶ 18. Under the principles set forth in

14

the FLSA regulations and applicable case law, only the hours Jones actually worked count towards her "hours of service" for FMLA eligibility. See Mutchler, 485 F.3d at 858-59; Plumley, 303 F.3d at 372. Thus, since there is no genuine dispute that Jones only actually worked 923 hours in the applicable twelve-month period, Jones is not an eligible employee under FMLA.

Although this Court concludes that Jones has not worked the required hours to be eligible under the Act, it must also consider whether Sharp is estopped from arguing that Jones was not eligible after approving her FMLA leave. Jones argues that Sharp is prevented from challenging Jones's eligibility under the Act because it approved her taking of FMLA leave. Mem. Resp. Mot. Summ. J. 8. While Jones does not specifically argue that the doctrine of equitable estoppel bars Sharp's eligibility contention, the doctrine, which is often considered in the FMLA context, is implicated here.[6] See, e.g., Dobrowski v. Jay Dee Contractors, Inc., 571 F.3d 551, 554 (6th Cir. 2009).

---

[6] Jones quotes language from 29 C.F.R. § 825.110(d) that is today no longer valid. See Resp. Mot. Summ. J. 8 (stating that if an employee requests FMLA leave without the minimum hours, the employer must "either confirm the employee's eligibility based upon a projection that the employee will be eligible on the date leave would commence or must advise the employee when the eligibility requirement is met. If the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility"). In 2009, the regulations were amended to remove the cited language. Compare 29 C.F.R. § 825.110(d) (1995), with 29 C.F.R. § 825.110(d) (2009).

15

To determine whether an employer can be equitably estopped from challenging an employee's eligibility, the Sixth Circuit has adopted the test articulated by the Supreme Court in Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51 (1984). Dobrowski, 571 F.3d at 555 (citing Heckler, 467 U.S. at 59). To prevail on a claim of equitable estoppel, Jones must show "(1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation." Id. at 557.

Jones has not raised a genuine dispute of material fact on all the elements necessary for this Court to invoke its equitable powers. There is no dispute that Sharp misrepresented Jones's eligibility when she requested and received FMLA leave beginning on September 20, 2009. See Jones SOF ¶¶ 34-35 (discussing Jones's request to take FMLA leave, the approval of her FMLA leave, and the remaining days of her FMLA leave entitlement); see also Dep. Exs. 31-32.

Jones, however, does not demonstrate that she reasonably relied on Sharp's misrepresentation and suffered a detriment resulting from her reliance. To show detrimental reliance, there must be some evidence in the record that indicates that Jones altered her position in reliance on the belief that her leave was protected under the FMLA. See Dobrowski, 571 F.3d at 557.

16

Not only does Jones fail to point to any evidence demonstrating that her decision to take leave was contingent on her eligibility under FMLA, she explicitly stated that she would have taken the time off regardless of whether it was covered under the FMLA. Jones Dep. 63. Additionally, Jones did not return to work even after Sharp informed her that she had exhausted her leaves of absence and might be discharged if she did not return by November 19, 2009. Jones SOF ¶¶ 38-39. Jones makes no reference to anything that casts doubt on whether she would have refrained from taking leave had she known it would not be covered under the FMLA. Accordingly, Jones raises no genuine issue of material fact suggesting that she detrimentally relied on Sharp's misrepresentation of her FMLA eligibility. Consequently, this Court cannot use its power of equitable estoppel to prevent Sharp's challenge that Jones was not eligible under the Act.

Thus, since it is undisputed that Jones did not work the requisite hours for FMLA eligibility and that she cannot point to any evidence that she detrimentally relied on Sharp's misrepresentation of eligibility, this Court grants Sharp's motion for summary judgment on the FMLA interference claim.

### b. **Jones Was Not Entitled to FMLA Leave, as She Exhausted Her Leave Under the Act**

Alternatively, even were Jones eligible for FMLA leave, Sharp is entitled to summary judgment on the interference claim because Jones is not here entitled to FMLA leave.

The Act provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). Employers are permitted to select any one of four methods for determining the applicable "12-month period." Thom v. Am. Standard, Inc., 666 F.3d 968, 973 (6th Cir. 2012).

These methods include: (1) the calendar year; (2) any fixed twelve-month "leave year"; (3) the twelve-month period starting when the employee's first FMLA leave began; or (4) a "rolling" twelve-month period measured backward from the use of any FMLA leave. 29 C.F.R. § 825.200(b)(1)-(4). Sharp elected to use the fourth method, a rolling twelve-month period, to calculate leave. Jones SOF ¶ 25.[7]

_____

[7] It is undisputed that Sharp used a rolling twelve-month period to calculate FMLA leave. Jones SOF ¶ 25. In Jones's case, the calculation is complicated because Jones used FMLA leave in October and November 2008. Neither Sharp nor Jones mention how this leave usage complicates the calculation of FMLA leave remaining in September through December 2009. As time progressed where some of the 2008 FMLA leave days were more than one year removed in the past, these days should no longer count against Jones in the rolling twelve-month period. Thus, this period must account for the continuing passage of time. See 29 C.F.R. § 825.200(c) (discussing how to do this accounting for the

18

The Act's regulations do not contain an explicit "requirement that employers inform their employees of their chosen method for calculating leave eligibility. The regulations nonetheless plainly contemplate that the employer's selection of one of four calculation methods will be an open one, not a secret kept from the employees, the affected individuals." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1127 (9th Cir. 2001). "[E]mployers should inform their employees in writing of which method they will use to calculate the FMLA leave year." Thom, 666 F.3d at 974 (affirming the district court's reliance on Bachelder).

In Thom v. American Standard, Inc., 666 F.3d 968, the Sixth Circuit held that constructive notice through union membership was insufficient to notify an employee of the company's change in how it calculated the FMLA leave year; actual notice was required. Id. at 973-74. Additionally, in Bachelder v. America West Airlines, Inc., 259 F.3d 1112, the Ninth Circuit held that the company did not properly notify its employees as to which method the company selected merely by "parrot[ing] the language of the Act." Id. at 1129. Concluding that the statute reasonably

rolling twelve-month period). As Jones does not dispute Sharp's contention that by October 5, 2009, she had exhausted her FMLA leave allowance, that by November 18, 2009, she had exhausted all of her leave under the FMLA and CBA, and that she was not able to return to work until December 16, 2009, this Court does not need to determine precisely when Jones's leave was exhausted.

19

could be read to allow four different methods of calculating the twelve-month period, the Court held a mere recitation of the statutory language in the company's handbook insufficient to inform employees of the company's policy. Id.

In contrast, here Sharp provided actual written notice to its employees of the company's selected FMLA leave year calculation method. Sharp informed employees of the rolling twelve-month calculation method on the Leave Request Form that employees were required to complete when requesting leave. Jones SOF ¶ 25. Jones completed these forms every time she took leave. Id. Sharp also provided notification of the rolling twelve-month method in the Employer Response to Employee Request for Family Medical Leave, which Jones received when she took leave in September 2009. Id. ¶ 26.

Although Jones admits that Sharp informed its employees about the rolling twelve-month method and that she completed the Leave for Request Form every time she requested FMLA leave and received the Employer Response to Employee Request for Family Medical Leave when she took leave in September 2009, she contends that she never understood what the rolling twelve-month period meant. Id. ¶¶ 25-26.

Thus, while Jones avers she did not understand the method used by Sharp to calculate the FMLA leave year, she does not dispute that Sharp provided actual, written notice of its

20

selection method. Accordingly, based on the standards articulated in the Sixth Circuit, Sharp sufficiently notified its employees of its selected calculation method as matter of law. Jones had ample opportunity to inquire into the applicable FMLA leave year and calculation method. See Id. ¶ 25. Her failure to do so does not nullify the fact that Sharp satisfied its notification requirement.

Here, Jones requested FMLA leave beginning on September 20, 2009. Jones SOF ¶¶ 15, 34. In the prior twelve-month period, Jones took FMLA leave numerous times. She took FMLA leave from October 17 through October 27, 2008, and again on October 31, 2008. Id. ¶ 27. Jones took FMLA leave again from November 4 through November 16, 2008. Id. ¶ 28. From November 24, 2008, through January 19, 2009, Jones took leave to have her kidney removed. Id. ¶¶ 29-30.[8]

It is undisputed that Jones used sixty-eight of the eight-four days she is entitled to in the applicable twelve-month period. Id. ¶ 33. Thus, Jones had sixteen remaining days of FMLA leave when she took her leave on September 20, 2009. Id.

On October 19, 2009, Sharp sent Jones a letter accurately informing her that on or about October 5, 2009, she had exhausted

_____

[8] Sharp informed Jones that these days would count as FMLA leave except for the twelve days in December when Sharp was closed; those twelve days would be treated as days of leave under the CBA. Id. ¶ 31.

21

all of her leaves of absences, and that she needed to return to work on November 19, 2009, or she would be terminated.[9] Id. ¶ 38; Dep. Exs. 41. Jones did not return to work, and Sharp terminated her employment on November 24, 2009. Jones SOF ¶ 39. Further, it is undisputed that Jones was unable to work through December 15, 2009. Id. ¶ 41.

Thus, after October 5, 2009, Jones was not entitled to any additional FMLA leave. Her FMLA leave had expired and Sharp's subsequent discharge did not interfere with Jones's rights under the FMLA.

Accordingly, summary judgment is proper on the interference claim because Jones, having exhausted all of her leave under the FMLA, was not entitled to further FMLA leave.

### 2. Retaliation for Exercising FMLA Rights

#### a. Ineligibility to Bring Retaliation Claim

In order to bring a retaliation claim under the FMLA, an employee must be an eligible employee under the FMLA. Staunch v. Cont'l Airlines, Inc., 511 F.3d 625, 629 (6th Cir. 2008); Humenny v. Genex Corp., 390 F.3d 901, 905-06 (6th Cir. 2004).

---

[9] Sharp's calculation appears to ignore the discounting that has to be done with regard to Jones's leave taken from November 4 through November 16, 2008. See supra note 7. To this Court, it appears that, as a result of dropping FMLA leave days that occurred more than twelve months previously, Jones actually exhausted her FMLA and CBA leave on November 22, 2009.

Accordingly, as determined in Section II.B.1.a, supra, there is no dispute that Jones has not worked the requisite number of hours in the applicable twelve-month period to be eligible for FMLA leave and therefore cannot state a claim for retaliation. Accordingly, this Court grants Sharp's motion for summary judgment on the retaliation claim.

### b. FMLA Retaliation Analysis

Even were the Court to assume that Jones was eligible for leave under the FMLA, summary judgment would be appropriate under an FMLA retaliation analysis.

Absent direct evidence of unlawful conduct, claims seeking redress for FMLA retaliation are evaluated "according to the triparte burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Bryson, 498 F.3d at 570. Under this framework, the plaintiff "must first prove a prima facie case of discrimination." Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001) (citing McDonnell Douglas, 411 U.S. at 802)). Next, the burden of production shifts to the employer to "articulate a legitimate, nondiscriminatory reason for [plaintiff's] discharge." Id. (citing McDonnell Douglas, 411 U.S. at 802-04). Once the employer has done so, any presumption of retaliation evaporates, and the plaintiff must show that the "articulated reason is in

reality a pretext to mask discrimination." Id. (citing McDonnell Douglas, 411 U.S. at 804-06).

While plaintiffs may establish a prima facie case of discrimination by various means, this Court adopts the test most frequently applied in the Sixth Circuit. See Bryson, 489 F.3d at 570. Thus, to establish a prima facie case, Jones must show "(1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." Id. at 570.

Assuming that Jones could establish such a prima facie case, the burden of production shifts to Sharp to articulate a legitimate and non-discriminatory reason for terminating Jones's employment. See Skrjanc, 272 F.3d at 315 (citing McDonnell Douglas, 411 U.S. at 802-04). The Sixth Circuit consistently has held that "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." Edgar, 443 F.3d at 506-07 (citing Williams, 224 F.3d at 845; Cehrs, 155 F.3d at 784-85); see Bryson, 498 F.3d at 571-72; see also 29 C.F.R. § 825.216(c) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, . . . the employee has no right to restoration to another position under the FMLA.").

24

Sharp contends that it terminated Jones's employment because she was unable to work and failed to return to work at the expiration of her FMLA leave.[10] On November 6, 2009, Sharp informed Jones that she had exhausted her leave and would be terminated if she did not return to work on November 19, 2009. Jones SOF ¶ 38. Furthermore, it is undisputed that Jones was unable to return to work through December 15, 2009. Id. ¶ 41.

Several days after Sharp learned Jones was unable to return to work until mid-December and Jones failed to return to work on the required date, Sharp terminated Jones's employment. Id. ¶ 39.

Accordingly, there is sufficient evidence demonstrating that Sharp terminated Jones's employment because she was unable to return to work at the expiration of her FMLA leave. Thus, Sharp has met its burden of production by presenting evidence that it fired Jones for a legitimate, non-discriminatory reason.

Thus, Jones must point to evidence that would enable a reasonable trier of fact to conclude that Sharp's stated reason for her termination is merely a pretext for unlawful retaliation. Bryson, 498 F.3d at 572. To do this, Jones points to a woman named Amber,[11] who was terminated due to absence but was later

---

[10] Sharp also notes that it gave Jones additional days of leave beyond those required by either the FMLA or the CBA.

[11] Sharp argues that Jones's testimony regarding Amber is hearsay and cannot be considered on summary judgment. Mem. Supp. Mot. Summ. J. 15. While Sharp is correct in asserting that the

permitted to return to work when she provided the necessary
paperwork. Jones SOF ¶ 47.

Although this Court views the facts in the light most
favorable to the plaintiff, Jones's reliance on Amber is
insufficient to survive summary judgment.[12] First, Amber is not
a similarly situated employee. Amber was a casual employee who
was not entitled either to FMLA or CBA leave. Id. ¶ 49.
Additionally, as Jones admits, Amber was not terminated for the
same reasons as Jones; Amber's situation was different. Id.
¶ 50. Furthermore, Jones is not aware of any other person who

---

Sixth Circuit does not allow hearsay to be considered on summary
judgment, this Court harmonizes the Sixth Circuit's standard with
that articulated by the Supreme Court. Compare Wiley v. United
States, 20 F.3d 222, 226 (6th Cir. 1994), with Celotex, 477 U.S.
at 324 (declaring that the nonmoving party does not have to
"produce evidence in a form that would be admissible at trial in
order to avoid summary judgment"). Accordingly, a moving party
cannot rely on hearsay evidence as the basis for summary
judgment; hearsay evidence, however, can be used by a nonmoving
party to oppose entry of summary judgment.

[12] It is only fair to point out that my former colleague,
Nancy Gertner, is -- correctly -- decrying the overuse of summary
judgment in employment discrimination actions in federal court,
especially on the ground that another employee was not "similarly
situated." Nancy Gertner, Losers' Rule, 122 Yale L.J. Online
109, 114 n.16 (2012) (quoting Wells v. SCI Mgmt., L.P., 469 F.3d
697, 701 (8th Cir. 2006)). Indeed, in some district courts,
employer motions for summary judgment in employment
discrimination actions are allowed seventy-four to seventy-seven
percent of the time. Id. at 112 n.11. Although she would
consider it a cop-out, this Court is here bound by stare decisis.
See generally id. (discussing the tendency that federal district
judges feel the law "compels" them to decide motions for summary
judgment in favor of the employer, id. at 113 (internal quotation
marks omitted)).

26

exhausted their leave under FMLA or the CBA but was not
terminated.  Id. ¶ 46.

Since Jones fails to point to any evidence demonstrating
that Sharp's reasoning was merely a pretext for retaliation,
Jones fails to cast any doubt on Sharp's articulated reason that
it terminated Jones's employment because she was unable to return
to work after the expiration of her FMLA leave.

Accordingly, this Court grants Sharp's motion for summary
judgment on the retaliation claim, as it is undisputed that Sharp
terminated Jones on the basis of her inability to return to work
after the expiration of her FMLA leave.

## C.   **Tennessee Disability Act**

The Tennessee Disability Act claim is a state law claim over
which this Court does not have original subject matter
jurisdiction.  Cf. Thurman v. DaimlerChrysler, Inc., 397 F.3d
352, 359 (6th Cir. 2004) (citing Community Health Plan of Ohio v.
Mosser, 347 F.3d 619, 622 (6th Cir. 2003)).  The Disability Act
claim was brought before this Court through supplemental
jurisdiction after removal from state court.  See Notice Removal
3.

"[W]hen all federal claims have been dismissed before trial,
the best course is to remand the state law claims to the state
court from which the case was removed."  Thurman, 397 F.3d at
359; see also 28 U.S.C. § 1367(c)(3) (providing that "the

district courts may decline to exercise supplemental jurisdiction over a claim," id. § 1367(c), when it "has dismissed all claims over which it has original jurisdiction," id. § 1367(c)(3)).

Accordingly, because this Court has entered summary judgment on Jones's federal claims, this Court remands the Tennessee Disability Act claim to the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis.[13]

## D. Judicial Estoppel

Having entered summary judgment on the federal claims and remanding the state claim to the appropriate state court, this Court need not address Sharp's argument for judicial estoppel.

**SO ORDERED.**

William A. Young
WILLIAM G. YOUNG[14]
DISTRICT JUDGE

Dated: March 19, 2013

---

[13] This action was also removed to this Court on the basis of diversity jurisdiction. The notice of removal, however, does not specify that the Tennessee Disability Act claim alone satisfies the amount in controversy requirement for diversity jurisdiction. As such, this Court declines to exercise supplemental jurisdiction.

[14] Of the District of Massachusetts, sitting by designation. Elec. Clerk's Notes, June 21, 2012, ECF No. 23.

28